IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Andrea Sherman, as Parent and Natural Guardian of M.D., Minor,<br><br>Plaintiff,<br><br>vs.<br><br>The Scotts Company, LLC, Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., and Jaycee Foust, Jr.,<br><br>Defendants. | Civil Action No.: 1:25-cv-13511-JFA<br><br><br>**OPINION AND ORDER** |

This matter is before the court on Plaintiff Andrea Sherman's motion to remand. (ECF No. 19). Having been fully briefed, this matter is ripe for review. For the reasons stated below, Plaintiff's motion to remand is denied.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

This action arises out of the accidental acephate poisoning of Sherman's minor daughter, M.D. Nyeaijah Saxon, her five-year-old daughter M.F., M.F.'s father, Tyreek Foust, Foust's mother, Florenda Sherman, and a family friend, Shelton Hammonds, resided at 2455 Red Oak Road, a single-family home located near Barnwell, South Carolina. The home is owned by Defendant Jaycee Foust, Jr., Tyreek's great-uncle and a South Carolina resident. Pursuant to a verbal agreement between Jaycee and Saxon's family, Saxon, M.F.,

---

[1] These facts are taken from the complaint and Nyeaijah Saxon's affidavit which was filed along with the instant motion to remand. For purposes of this motion, they are assumed to be true and construed in a light most favorable to Plaintiff.

Tyreek, Florenda, and Hammonds were allowed to reside at the home, and in exchange they paid for the utilities and performed various tasks necessary for the upkeep of the home, such as cleaning. After residing in the home, the family encountered a roach infestation.

Plaintiff further alleges that the home contained structural defects such as cracks and gaps in the walls and ceilings of the building, between the baseboards and the floor, and around and behind the kitchen cabinetry. These conditions are alleged to have contributed to the roach infestation. Jaycee was allegedly aware of the physical conditions of the home as well as the roach infestation as he frequently visited the home and would spend the night several times a month. However, Jaycee never undertook any actions to repair or seal the home to reduce or eliminate the infiltration of roaches, and he never undertook any other efforts to eliminate the infestation.

Through social media, such as Tik Tok and Instagram, Saxon became aware of a product known as Orthene Fire Ant Killer manufactured by Scotts and sold at Wal-Mart, for which the active ingredient is acephate. Acephate is significantly toxic when ingested and is known to cause profuse sweating, headaches, nausea, vomiting, grand mal seizures, paralysis, respiratory failure, and death. The product is a fine, white powder, making it highly susceptible to contamination and transfer. The front label of Orthene is shown below.



Despite multiple express warnings on Orthene's label, including that it is "FOR OUTDOOR HOME USE ONLY" and "KEEP OUT OF REACH OF CHILDREN," Hammonds liberally applied Orthene, which Saxon purchased from Walmart, throughout the interior of the home. Saxon avers that she purchased Orthene because numerous social media posts depicted consumers specifically using Orthene Fire Ant Killer within the interior of homes or instructing viewers to use the product within the home and boast of its ability to completely eliminate infestations.

Plaintiff avers Jaycee knew, or should have known, that the Orthene had been applied indoors to combat the infestation because he visited the home after it had been liberally applied, and the Orthene was highly visible and has an extremely strong smell, similar to rotting cabbage or spoiled milk.

On October 6, 2023, M.F. and her twelve-year old cousin M.D. came to the home after school. M.D. made food for the girls, including eggs and bread. Some of the food fell on the floor, and the Orthene contaminated the food, which was subsequently ingested by M.F. [2] and M.D. Thereafter, M.D. became severely ill, experiencing severe pain, nausea, numbness of limbs, seizures, and shortness of breath. She ultimately spent six days in the hospital being treated for acephate poisoning.

Plaintiff filed this action in the Barnwell County Court of Common Pleas on October 16, 2025, bringing claims on behalf of M.D. against the Wal-Mart Defendants and Scotts under products liability claims, including strict liability, negligence, and breach of warranty under failure to warn and design defect theories, as well as a negligence claim against Jaycee for failing to undertake reasonable measures to prevent the home from becoming infested with roaches. Scotts and the Wal-Mart Defendants removed the case to this Court on November 21, 2025, under the so-called "fraudulent joinder" theory.

---

[2] M.F. died as a result of her exposure to acephate. Her claims are the subject of a parallel lawsuit, 1:25-cv-13510-JFA, averring many of the same claims at issue here. The court similarly denied the motion to remand in that action for many of the same reasons discussed herein. To the extent necessary, the Order denying the motion to remand in that action is incorporated herein by reference.

Apart from alleging that Jaycee owned the subject home, Plaintiff's complaint only addresses Jaycee by averring:

> The Plaintiff is informed and believes the Defendant was negligent, willful, wanton, careless, reckless and grossly negligent in following particulars:
>
>> (a) In failing to implement reasonable pest control measures in his home despite the severity of the infestation;
>>
>> (b) In allowing the home to become infested with roaches;
>>
>> (c) In failing to act in a reasonably prudent manner; and
>>
>> (d) In any other particulars as may be shown by the evidence.

(Compl. ¶ 21). The complaint contains no allegations that Jaycee was in any way responsible for or knew of the use of Orthene within the home.

In an apparent effort to shore up the threadbare allegations against Jaycee, Plaintiff submitted an affidavit from Saxon along with the motion to remand in which Saxon avers: "The structure of the home was in a condition such that it was not reasonably sealed from the outdoors. There were gaps along the baseboards of the home, between the kitchen cabinetry and the floor, around the doorways, and in the ceiling and the floor was in disrepair." (ECF No. 19-2, ¶ 5). Saxon further avers Jaycee should have been aware of the application of Orthene because he "visited the home during the time period after which the Orthene had been applied. The Orthene was highly visible and had a very strong smell." (ECF No. 19-2, ¶ 9).

Plaintiff and Jaycee both reside in South Carolina. All other defendants are residents of states other than South Carolina for purposes of diversity jurisdiction. Although this

matter lacks complete diversity on its face, Walmart and Scotts argue that Jaycee is a sham defendant in that Plaintiff cannot establish the duty, breach, and proximate cause elements of her negligence claim against him, and that he was only joined as a party to destroy diversity. Accordingly, Jaycee should be subject to immediate dismissal and consequently disregarded when determining subject matter jurisdiction. This motion to remand followed.

## II.    LEGAL STANDARD

A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court if the case could have been brought there originally. 28 U.S.C. § 1441. Removal of a case from state to federal court may be accomplished through 28 U.S.C. § 1441(a), which states in relevant part:

> [A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The party seeking removal bears "the burden of establishing federal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Moreover, the Fourth Circuit has held that removal jurisdiction is to be strictly construed in light of federalism concerns. *See Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005). If federal jurisdiction is doubtful, remand to state court is required. *Id.* at 441.

District courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different states." 28 U.S.C. § 1332(a)(1).

6

However, the parties may find an exception to the well-settled complete diversity rule in the fraudulent joinder doctrine. A claim of fraudulent joinder permits the district court to "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants" upon a showing either that "(1) plaintiff committed outright fraud in pleading jurisdictional facts, or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the in state defendant in state court." *Weidman v. Exxon Mobile Corp.*, 774 F.3d 214, 218 (4th Cir. 2015); *see also Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1016 (4th Cir. 2014) (calling the test for fraudulent joinder "our longstanding 'glimmer of hope' test").

The defendant carries the heavy burden to prove fraudulent joinder, a determination made after "resolving all issues of law and fact in the Plaintiff's favor." *Wygal v. Litton Loan Servicing LP*, No. 5:09-cv-322, 2009 WL 2524701, at 2 (S.D. W. Va. Aug. 18, 2010). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)" and the Plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The court may also consider facts in the record outside of the pleadings in determining whether fraudulent joinder has occurred. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

### III.     ANALYSIS

Here, the parties do not dispute that this case lacks complete diversity with the inclusion of Jaycee.[3] Rather, the dispute centers on whether Jaycee is a proper defendant or whether he has been fraudulently joined to defeat diversity jurisdiction.

In its Notice of Removal, Defendants urge the use of the fraudulent joinder doctrine, which "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999) (citing *Cobb v. Delta Exp. Inc.,* 186 F.3d 675, 677–78 (5th Cir.1999)).

Here, Defendants do not allege "outright fraud" in Plaintiff's pleadings but rather assert there is no possibility Plaintiff can maintain a cause of action against Jaycee. Defendants allege that Jaycee is not a proper defendant because he owed no duty of care to Plaintiff and that his actions cannot be deemed a proximate cause of Plaintiff's injuries.

To establish a claim for negligence against Jaycee, the only type of claim pleaded against him, Plaintiff must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately caused by the breach." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 535 (D.S.C., 2014) (citing *Huggins v. Citibank, N.A.,* 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003)).

---

[3] There appears to be no disagreement that the amount in controversy exceeds $75,000.

Plaintiff argues that "[b]ecause no South Carolina case has squarely held that under the common law, a property owner under [sic] cannot be liable for physical injuries to guests when his failure to upkeep the physical condition of his property results in subsequent insect infestations, and any duty, breach, and proximate cause analyses would depend upon several variables and judgment calls that could go either way, the Court cannot say with certainty that a South Carolina state court would find Plaintiff's claims against [Jaycee] are barred by state law." (ECF No. 19-1, p. 7). Thus, Plaintiff avers this case must be remanded. As shown below, the court respectfully disagrees.

    a.  <u>SCRLTA</u>

It is unclear whether Plaintiff is asserting negligence claims arising out of Jaycee's alleged duties under the South Carolina Residential Landlord and Tenant Act ("SCRLTA"). (*See* ECF No. 19-1, p. 9)("Additionally, under South Carolina law it is unknown if any protections deriving from the RLTA could extend to guests of tenants as well as tenants."). Plaintiff's briefing continually alludes to Jaycee's duty under South Carolina common law but also states that "[u]nder RLTA, [Jaycee's] violation of S.C. Code Ann. § 27-40-440 would necessarily establish both the duty and breach elements of Plaintiff's claims." (ECF No. 19-1, p. 11).  To the extent Plaintiff is advancing a negligence claim based on the SCRLTA, it would fail for the reasons stated in the Order denying Saxon's motion to remand. That Order is incorporated herein by reference.

b.  Common Law

Apart from Plaintiff's possible theory of liability premised on the SCRLTA, Plaintiff also advances a common law claim predicated on a theory that Jaycee had a duty to warn M.D. of the presence of Orthene, a hazardous chemical, and that he could be liable for damages proximately caused by his failure to warn.

The parties discuss the possibility of M.D. being an invitee or a licensee and the commensurate duties owed under either scenario.[4] As to invitees, landowners have a duty to warn "only of latent or hidden dangers of which the landowner has knowledge or should have knowledge." [5] *Sims v. Giles*, 343 S.C. 708, 718, 541 S.E.2d 857, 863 (Ct. App. 2001). Licensees "can be said to accept the premises as they are and demand no greater safety

---

[4] Defendants' brief also references the possibility of a heightened duty owed to M.D. given her status as a minor. The court is mindful that the "degree of care required is commensurate with the particular circumstances involved, including the age and capacity of the invitee." *Sims v. Giles*, 343 S.C. 708, 718, 541 S.E.2d 857, 863 (Ct. App. 2001). However, Plaintiff's complaint alleges no such duty and Plaintiff's briefings fails to advance any such theory of heightened duty. Accordingly, the court declines to address such an argument as Plaintiff has not pursued it. Although Plaintiff avers she has cited to *Larimore v. Carolina Power & Light*, 340 S.C. 438, 445, 531 S.E.2d 535, 538 (Ct. App. 2000) for the proposition that Jaycee owed a heightened duty to the minors, Plaintiff must do more than take a "passing shot" to present the argument to the court. *See U.S. v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022)("A party also waives an issue by failing to develop its argument—even if its brief takes a passing shot at the issue."). Plaintiff has failed to do so here. Regardless, as discussed throughout this order, Plaintiff has failed to allege facts to support the finding of a duty or proximate cause notwithstanding Plaintiff's status. Moreover, Plaintiff has alleged no facts showing Jaycee knew M.D. or that M.D. would be entering the home, let alone her status as a minor.

[5] However, a landowner "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such. knowledge or obviousness." *Sims v. Giles*, 343 S.C. 708, 719, 541 S.E.2d 857, 863 (Ct. App. 2001).

than his host provides himself." *Id.* However, this distinction is irrelevant for present purposes as Plaintiff's claims fail regardless of the duty owed.

The duties imposed upon a landowner are founded on their superior knowledge of the premises at issue. *Larimore v. Carolina Power & Light*, 340 S.C. 438, 448, 531 S.E.2d 535, 540 (Ct. App. 2000)("The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.")

Here, there is no indication Jaycee had knowledge over and above that already known to M.D. Plaintiff would have Jaycee charged with constructive notice of the presence of a dangerous chemical erroneously spread inside the home based solely on her contention that "orthene was highly visible and had a very strong smell." (ECF No. 19-2, ¶ 9). Although such allegations may have alerted Jaycee to the presence of some foreign substance, the record contains absolutely zero allegations that he knew what the powder was, knew it was the insecticide Orthene, ever saw or read the Orthene label, knew that Plaintiff had improperly used it indoors, or knew that it was potentially dangerous to residents. Plaintiff may have alleged facts sufficient to show Jaycee was aware of the presence of a white powder but has failed to allege any facts showing he was aware the powder was in any way dangerous to the inhabitants of the home. Without knowledge that the powder posed a danger, Jaycee had no duty to warn others of its presence.

Even if Jaycee had knowledge the powder was present, Plaintiff has failed to allege that M.D. was unaware of the presence of Orthene or the dangers associated therewith. Stated differently, if Jaycee was on notice of the presence of dangerous chemical based on

11

the smell of a white powder, M.D. was on notice of the same conditions. Plaintiff postulates that possibly one could conceive of a situation in which Jaycee knew the powder was Orthene by smell alone[6] and that possibly the court could find a duty to M.D. who may be a licensee or invitee because he exercised some modicum of control[7] over the house because he often visited[8] and that possibly a jury could then find he was responsible for the accidental ingestion of improperly applied insecticide. The problem is that none of these "possibilities" or knowledge Plaintiff now seeks to impute to Jaycee is supported by any facts or allegations within the record.

Moreover, Plaintiff has not alleged that Jaycee even knew M.D., knew she was a minor, or knew she would be present at the home. Assuming Jaycee had some control over the home after it was leased to Saxon, which is not alleged, how then could he be charged with a duty to warn a minor he is not alleged to have known existed about a powder he is

---

[6] (See ECF No. 27, p. 4) ([I]t is possible that further discovery will reveal that Foust knew of the application of pesticides and their toxic characteristics.").

[7] (See ECF No. 27, p. 5) ([I]t is possible that he maintained some measure of control over the premises.").

[8] Plaintiff 's argument that Jaycee "appears to have possibly maintained some level of control over the property" is flatly contradicted by Saxon's affidavit wherein she avers the tenants "were entitled under our verbal agreement with [Jaycee] to reside in the home to the exclusion of others." (ECF No. 19-2, ¶ 6). Despite this, Plaintiff argues a "reasonable inference from the affidavit is that [Jaycee] likely maintained shared possession of the home, and at minimum supports that it is possible that he maintained some measure of control over the premises. Evidence that he retained keys to the home and would visit the home without notice to the other residents or their permission would be sufficient under the common law to establish a duty of reasonable care for the safety of the premises and is certainly possible given the factual scenario described in the affidavit." (ECF No. 27, p. 5). Plaintiff's reference to keys, visitation without notice, or control over the premise appear to be pure speculation with no support found in the record. Plaintiff may not utilize the hope of hypothetical facts to support her claims.

not alleged to have knowledge was dangerous? The facts as alleged by Plaintiff foreclose any "glimmer" of success she asserts here.

Plaintiff would have this court hold that Jaycee had a duty to warn M.D. that the insecticide which Saxon selected and instructed to be placed in the home without Jaycee's actual knowledge, direction or consent, and which contained multiple warnings that it is "FOR OUTDOOR HOME USE ONLY" and should be kept "OUT OF REACH OF CHILDREN," presented an unreasonable danger to M.D.—whom he is not alleged to have been aware of her presence. Plaintiff's argument is that Jaycee can be held liable for M.D.'s insecticide poisoning based on smell alone. Such a contention stretches South Carolina negligence law well past its permissible boundaries. Such a theory is not just "novel," it is unfounded. Accordingly, Plaintiff has failed to indicate any possibility of success on this alternative theory of liability.

c. Proximate Cause

Regardless of the Plaintiff's threadbare allegations; of M.D.'s status as a minor, tenant, licensee, or invitee; or of Jaycee's alleged knowledge of gaps in the baseboards, the court is firmly convinced that this action presents one of the rare instances in which proximate cause can be deemed lacking as a matter of law even when Plaintiff's alleged facts are accepted as true and favorably construed. *Hurd v. Williamsburg Cnty.*, 353 S.C. 596, 613–14, 579 S.E.2d 136, 145 (Ct. App. 2003), *aff'd,* 363 S.C. 421, 611 S.E.2d 488 (2005)("Only in rare or exceptional cases may the question of proximate cause be decided as a matter of law."); *see also Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 464, 494 S.E.2d

835, 843 (Ct. App. 1997)("Only when the evidence is susceptible to only one inference does it become a matter of law for the court."). Plaintiff correctly argues that proximate cause is most commonly an issue of fact left to the sound discretion of the jury. The court agrees with this general premise and is loath to subsume the role of a fair and impartial jury.[9] However, simply outlining a causal chain and averring proximate cause exists does not make it so. The plaintiff must also allege facts sufficient to determine foreseeability. "Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought." *Stone v. Bethea*, 251 S.C. 157, 161, 161 S.E.2d 171, 173 (1968).

Defendants point to several cases in which South Carolina Courts have determined proximate cause is absent despite alleged evidence to the contrary. *Kennedy v. Carter*, 249 S.C. 168, 153 S.E.2d 312 (1967)(reversing a verdict for passenger against the speeding driver after car in which he was riding was run off the road by a drunk driver); *Locklear v. Southeastern Stages, Inc.*, 193 S.C. 309, 8 S.E.2d 321 (1940)(finding any negligence against a bus driver for improperly stopping in a road way did not proximately cause injuries to passengers that were hit by passing car); *Hensley v. Heavrin*, 277 S.C. 86, 282 S.E.2d 854 (1981), (noting that the act of a husband in striking his wife and breaking her jaw after he learned she had been misdiagnosed with syphilis was the proximate cause of

---

[9] *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 464, 494 S.E.2d 835, 843 (Ct. App. 1997)("Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence.")(collecting cases).

her injuries, and not any alleged medical malpractice that led to the misdiagnosis.). Each of these cases underscore the proposition that proximate cause may be determined as a matter of law in rare instances.

Plaintiff avers that these cases are inapplicable here given that they only consider the independent, intervening conduct of third parties that is willful, reckless, and criminal in nature. Plaintiff further offers that "[e]ven assuming *arguendo* that [Saxon's] conduct in purchasing the Orthene is considered to be the primary efficient cause of M.D.'s injuries and M.F.'s death, [Jaycee's] negligence in not repairing the physical structure of the home or warning of the hazardous conditions created by the Orthene imposes liability on [Jaycee] because without his omissions, the Orthene would have never been applied and M.D. and M.F. would have never ingested it." (ECF No. 27, p. 9). The court disagrees.

Initially, there appears to be no brightline rule that the intervening acts must be criminal or reckless to break the causal chain as a matter of law. Indeed, South Carolina courts have determined a lack of probable cause in cases lacking criminal intervention. *See e.g. Rife v. Hitachi Const. Mach. Co.*, 363 S.C. 209, 220, 609 S.E.2d 565, 571 (Ct. App. 2005)("Rife's injuries were not the foreseeable consequences of Hitachi's failure to equip the EX100 with a seat belt because it was designed and manufactured in compliance with Japanese standards solely for use in Japan. Hitachi could not reasonably foresee the EX100 would injure a user in a foreign market. Any foreseeability link or concatenation was severed when the EX100 was imported into the United States. Furthermore, the exclusion of the seat belt on the EX100 was NOT the proximate cause of Rife's injuries.").

More importantly however, it appears Plaintiff has improperly equated actual cause (also referred to as "causation in fact" or "but for causation") and legal cause (also referred to as "proximate cause"). To be fair, this distinction has plagued every attorney since its introduction in the first year of law school. However, the court is mindful that only damages proximately caused by the alleged breach are actionable.

> Proximate cause requires proof of causation in fact and legal cause. Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability.

> The touchstone of proximate cause in South Carolina is foreseeability. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained-of act. For an act to be a proximate cause of the injury, the injury must be a foreseeable consequence of the act. Although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the actor should have contemplated the particular event which occurred.

> Proximate cause is the efficient or direct cause of an injury. Proximate cause does not mean the sole cause. The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury.

> An intervening force may be a superseding cause that relieves an actor from liability. However, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated.

*Rife v. Hitachi Const. Mach. Co.*, 363 S.C. 209, 216–17, 609 S.E.2d 565, 569 (Ct. App. 2005)(cleaned up); *see also Hurd v. Williamsburg Cnty.*, 353 S.C. 596, 612–13, 579 S.E.2d 136, 144–45 (Ct. App. 2003), *aff'd,* 363 S.C. 421, 611 S.E.2d 488 (2005)("One is not charged with foreseeing that which is unpredictable or which would not be expected to happen as a natural and probable consequence of the defendant's negligent act.").

16

Therefore, not every but-for cause constitutes a legal cause. Plaintiff appears to argue that presence on the causal chain alone is sufficient to withstand scrutiny at any level. Under Plaintiff's reasoning, any actor in the causal chain could be hailed into court despite tenuous causation allegations so long as their actions, however far removed, were not willful or criminal. Following that logic, the factory worker who produced a bent fork that allowed M.D.'s food to fall to the floor, which then became contaminated prior to M.D.'s consumption could be called into court simply because his presence in the causal chain was uninterrupted by criminal action. Such an absurd result cannot stand. Although this example is admittedly hyperbolic, it highlights Plaintiff's erroneous causal arguments.

Put simply, it was in no way foreseeable that Jaycee's ownership of a house with gaps in the baseboards would somehow cause the injuries to M.D., let alone by insecticide ingestion. This is especially true when considering the intervening cause of improper application. Saxon, not Jaycee, purchased Orthene which was clearly marked as "FOR OUTDOOR HOME USE ONLY" and "KEEP OUT OF REACH OF CHILDREN." Jaycee could not have foreseen that a dangerous exterior poison would be erroneously and "liberally" applied throughout the home where a young child resided. Accordingly, the facts as alleged by Plaintiff show that Jaycee's actions cannot be adjudicated as the proximate cause of Plaintiff's injuries. Plaintiff may have presented a colorable argument for actual but for causation. However, as to Jaycee, the unforeseen misuse of a dangerous pesticide unambiguously breaks the causal chain such that Plaintiff has no possibility of recovering against Jaycee. Thus, he must be dismissed.

To remove all doubt, Defendants also note that an "act or omission that does no more than furnish the condition or give rise to the occasion by which the injury is made possible is not the proximate cause of the injury." *Shepard v. S.C. Dep't of Corr.*, 299 S.C. 370, 374, 385 S.E.2d 35. 37 (Ct. App. 1989)(citing *Driggers v. City of Florence*, 190 S.C. 309, 2 S.E.2d 790 (1939)).

"A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion." *Driggers v. City of Florence*, 190 S.C. 309, 2 S.E.2d 790, 791 (1939). "If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause." *Id.* And if an independent negligent act or defective conditions sets into operation the circumstances which result in injury because of the prior defective condition, such subsequent act or condition is the proximate cause." *Id.*

At best, the physical state of the home did no more than "furnish the condition or give rise to the occasion" which caused Plaintiff's injuries. The gaps in baseboards and around cabinets may have arguably created a condition that allowed the intrusion of pests but did not create the type of danger alleged here. Therefore, M.D.'s subsequent ingestion of Orthene was not foreseeable to Jaycee. Accordingly, Plaintiff's negligence claims fail as a matter of law.

## IV.     CONCLUSION

Each party to this litigation, including the undersigned, acknowledges the heartbreaking nature of Plaintiff's injuries. However, the tragic nature of loss does not expand the permissible bounds of liability. Here, Plaintiff has failed to allege Jaycee owed a duty to warn of the erroneous indoor application of an exterior pesticide and further fails to allege facts showing that M.D.'s injuries were proximately caused by any of Jaycee's actions or inactions. Accordingly, Plaintiff has failed to show the possibility of success as to Jaycee and the claims against him must be dismissed. Consequently, this court possesses jurisdiction over the remainder of this action and Plaintiff's motion to remand is respectfully denied.

IT IS SO ORDERED.

March 20, 2026                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge

19